Frances C. CORBIN, Plaintiff,

v.

Lee CANNON, Sheriff, Pasco County, and Mario Pascalli, individually and as a police officer for the Sheriff, Pasco County, et al., Defendants.

No. 93–743–CIV–T–17A.

United States District Court,
M.D. Florida,
Tampa Division.

Nov. 10, 1993.

John S. McAvoy, Law Office of John S. McAvoy, Clearwater, FL, for plaintiff.

Ronald A. Labasky, Barbara C. Fromm, Parker, Skelding, Labasky & Corry, Tallahassee, FL, for defendants.

## ORDER ON DEFENDANT CANNON'S MOTION TO DISMISS

KOVACHEVICH, District Judge.

This cause comes before the Court on Defendant Cannon's motion to dismiss filed June 3, 1993. No response to motion to dismiss was filed.

A complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). A trial court ruling on a motion to dismiss is required to view the complaint in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

### FACTS

It is not disputed that on June 2, 1992, Defendant Pascalli and unknown Officer Doe went to Plaintiff Frances Corbin's home in order to arrest Plaintiff's son. However, there are two versions as to what happened during the arrest.

Plaintiff contends that Defendant Pascalli and Officer Doe were unknown to her and arrived at her residence dressed in street clothes. They did not identify themselves to her as police officers. According to the facts alleged in her complaint, Defendants Pascalli and Doe entered her residence uninvited and while there Defendant Pascalli proceeded to grab Plaintiff's son, slam his head into a wall and further prepared to assault Plaintiff's son with his fists.

Plaintiff alleges that in an effort to protect her son from the attack by this unknown assailant, she grabbed Defendant Pascalli's arm. Pascalli then threw Plaintiff into a chair and the wall. As a result of this assault, Plaintiff sustained permanent and serious injuries, including a herniated disc, and assorted head, neck, and back injuries. Pascalli then handcuffed Plaintiff's son and took him to the front yard of the house where Pascalli struck Plaintiff's son.

After this attack, Pascalli finally identified himself as a police officer. Plaintiff then advised Defendant Pascalli that she intended to file a complaint with the Internal Affairs Department of the sheriff's office. Pascalli allegedly retorted that Plaintiff was lucky he didn't arrest her for battery on a law enforcement officer and obstruction of justice.

Defendant Pascalli in his answer to Plaintiff's complaint offers another story as to what happened on June 2, 1992. In his version, Plaintiff knew Pascalli's identity when he arrived at her residence. While he admits that he physically restrained Plaintiff's son, he denies striking or otherwise assaulting either Plaintiff or Plaintiff's son. Instead, Pascalli alleges that Plaintiff physically assaulted him. Defendant Pascalli subsequently advised Plaintiff that she faced possible charges for assault on a law enforcement officer.

It is also undisputed that an Internal Affairs investigation was conducted. However, what happened during the course of the investigation is in dispute. Plaintiff avers that she was advised by Sheriff's representatives that her medical bills would be paid. When she subsequently advised Sheriff's representatives of the seriousness of her injuries, the Internal Affairs Department reversed its position and exonerated Defendant Pascalli of all charges against him. Only after Plaintiff's report of the seriousness of her injuries did Defendant Pascalli file battery and obstruction of justice charges against Plaintiff.

Plaintiff also avers that no action was taken on such charges until after she hired an attorney and the requisite Notice of Claim pursuant to the Florida Tort Claims Act was

filed. After the filing of her Notice of Claim, Plaintiff was arrested while visiting her son in jail.

Defendant Pascalli contends that an Internal Affairs investigation into the events on June 2, 1992, did take place. He was exonerated of any wrongdoing. He has no knowledge of any offer made by Sheriff's representatives to pay Plaintiff's medical bills or any subsequent withdrawal of such an offer. Although he also admits that a warrant and information was filed against the Plaintiff for battery on a law enforcement officer, he claims no knowledge of the particular circumstances surrounding Plaintiff's subsequent arrest.

Finally, as to Defendant Cannon's involvement in the events of June 2, 1992, Plaintiff contends that Defendant had developed a "hands off" policy regarding illegal acts committed by police officers against civilians. This policy encouraged Defendant Pascalli that he was free to violate the Constitutional rights of Plaintiff with the approval of Defendant Cannon.

## DISCUSSION

It is necessary to analyze three bases of liability under which Defendant Cannon may be held accountable for a violation of Plaintiff's rights. These bases include his personal involvement in the deprivation of Plaintiff's constitutional rights, vicarious liability for the actions of another which deprived Plaintiff of her constitutional rights, or by his causation or implementation of a policy or custom which subjected Plaintiff to a deprivation of her rights.

The first basis may be summarily dismissed. Plaintiff does not allege anywhere in her complaint that Defendant Cannon was at her residence or otherwise personally involved in the events of June 2, 1992. Nor does Plaintiff allege that Defendant Cannon was personally involved in the Internal Affairs investigation which followed the events surrounding the arrest of Plaintiff's son.

Secondly, it is necessary to address the issue of vicarious liability. In *Monell v. Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the United States Supreme Court held that the theories of vicarious liability and respondeat superior may not be used to hold a defendant liable in a civil rights suit. Thus, Defendant Cannon may not be held liable under either one of these theories.

This leaves only the third basis of liability as a possibility for Plaintiff to successfully maintain suit against Defendant Cannon. Therefore, we turn our attention to the issue of whether or not Defendant Cannon caused Frances Corbin to be subjected to a deprivation of her constitutional rights. In *Monell*, the Supreme Court stated that a defendant in a civil rights action may not be held liable unless he is either personally involved in the action giving rise to the § 1983 claim or Plaintiff establishes that Defendant caused a custom or policy that made the deprivatory actions likely to occur.

In his motion to dismiss, Defendant Cannon points out that he was not the Sheriff of Pasco County on June 2, 1992, when the alleged events giving rise to this action took place. In fact, he was not elected to the office of Sheriff of Pasco County until five months after the events, and did not take office until several months after his election.

Rule 201, Fed.R.Evid., provides that a court may take judicial notice of a fact that is not subject to reasonable dispute in that it is capable of "accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Clearly, the fact that Defendant Cannon did not hold the position of Sheriff of Pasco County either on or before June 2, 1992 is such a readily and accurately verifiable fact. In fact, it is clear that Plaintiff herself has taken notice that Defendant Cannon was not the Sheriff at the time of the incidents. A mere glance at the Notice of Claim (mailed July 20, 1992) attached to Plaintiff's complaint shows that Plaintiff addressed it not to Defendant Cannon but to Jim Gillum, Sheriff of Pasco County. Therefore, the Court takes judicial notice that Defendant Cannon was not Sheriff of Pasco County on June 2, 1992.

Since it has been determined that Defendant Cannon was not the Sheriff of Pasco County, and it has not been alleged that he held another policy making position within the county at the time of the alleged incidents, it is impossible to see how he could be held responsible for either implementing or

effectuating a custom or policy that led others to deprive Plaintiff of her constitutional rights.

■ Finally, Plaintiff requested the Court to consider her state law claims against Defendant Cannon under a theory of pendent jurisdiction. The Eleventh Circuit in *Roper v. Edwards,* 815 F.2d 1474 (11th Cir.1987), held that once the federal claims against a party in federal court have been dismissed, the state claims against such party can no longer be heard by the federal court. Thus, although Plaintiff's claim of pendent jurisdiction over the state law claims would be applicable had her federal claim not been dismissed, the fact that Plaintiff's 42 U.S.C. § 1983 claim against Defendant Cannon was dismissed earlier in this order makes it necessary to also dismiss the state claims against Defendant Cannon.

**ORDERED** that the Motion to Dismiss of Defendant Cannon be **granted,** and the Clerk of Court enter a final judgment of dismissal.

**DONE AND ORDERED.**